**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ARTURO JUAN WHITE,

      Petitioner,

                                    CASE NO. 2:09-CV-13238

v.                                HONORABLE DENISE PAGE HOOD
                                      UNITED STATES DISTRICT JUDGE

GREG McQUIGGIN,

      Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITON FOR WRIT OF HABEAS CORPUS AND ISSUING A CERTIFICATE OF APPEALABILITY

      Arturo Juan White, ("Petitioner"), presently confined at the Chippewa

Correctional Facility in Kincheloe, Michigan, has filed petition for writ of habeas

corpus through counsel S. Allen Early pursuant to 28 U.S.C. § 2254, in which he

challenges his conviction for three counts of first-degree murder, M.C.L.A.

750.316; one count of possession of a firearm in the commission of a felony,

M.C.L.A. 750.227b; and one count of felon in possession of a firearm, M.C.L.A.

750.224f. [1]  For the reasons stated below, the petition for writ of habeas corpus is

DENIED.

---

     [1]  Petitioner was originally convicted of three counts of first-degree premeditated murder and three counts of first-degree felony murder, based on the murder of three victims.  On appeal, the Michigan Court of Appeals ordered that petitioner's judgment of sentence be modified to reflect three convictions for first-degree murder, each supported by two theories, premeditated murder and felony murder.

# I.  Introduction

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court, in which he was tried jointly with co-defendant Lamar Woods, who was acquitted of all the charges.  This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant was convicted, following a jury trial, of three counts of first-degree premeditated murder, MCL 750.316(1)(a), three counts of first-degree felony murder, MCL 750.316(1)(b), felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b, arising from the shooting deaths of three victims.  He was sentenced to concurrent terms of life imprisonment for each of the six murder convictions, and thirty-eight months to five years' imprisonment for the felon-in-possession conviction, and to a consecutive two-year term for the felony-firearm conviction.  He appeals as of right.  We affirm defendant's convictions, but remand for modification of the judgment of sentence.
>
> The prosecutor introduced testimony at trial that had been previously given by a witness at a proceeding pursuant to an investigative subpoena.  The witness had testified at the subpoena proceeding that he saw defendant, carrying an AK-47, enter the victims' house shortly before the killings.  The witness had also testified that defendant came to his house later, still carrying a weapon, and threatened that he would kill the witness unless he drove defendant to the hospital.  At trial, the witness admitted that he made the statements under oath, but denied that they were true.
>
> Evidence was also introduced of the witness' oral and written statements to police, indicating that defendant told the witness he was going to rob someone, that the witness saw defendant enter the victims' house with an AK-47, and that defendant later told him that he had been shot, and that "some people tried to rob him, but he killed them."

2

The witness testified at trial that he understood when he gave his statements that he had the right to remain silent and the right to have an attorney present.  The witness acknowledged that he told the police that defendant threatened to kill him and his mother if he told the police what happened, and that defendant told the witness that he would be watched to be sure he did not "snitch." [2]  The witness testified at trial that none of the things he told the police were true.

Girlfriends of one of the victims testified that the victims were planning to engage in a drug transaction with "friends from around the block to make some extra money."

According to the caller ID in the victims' home, the last call made from the home was to defendant's telephone number.  No guns or drugs were found in the house.  There was evidence that more than one type of weapon had been fired, a trail of blood leading away from two of the victims and bloodstains outside on the driveway, but no blood analysis or gunshot residue tests were conducted by the police.

Defendant also gave the police a statement, in which he admitted that he was in the house at the time of the killings, where he took cocaine and "cooked it up," but claimed that he had also been a victim of the crime by two unknown men.  Defendant suffered from six gunshot wounds and said that he pretended to be dead until the assailants left, and then went to the hospital.  Defendant told the police that he did not check on the other victims or call 911 because he did not want to be involved.

*People v. White,* No. 249210, * 1-2; 2004 WL 2624722, * 1 ((Mich.Ct. App. November 18, 2004).

Petitioner's conviction was affirmed on appeal. *Id.; lv. den.* 473 Mich. 884;

699 N.W.2d 705 (2005).  Petitioner then filed a post-conviction motion for relief

---

[2]  The witness was required to appear at defendant's preliminary examination, where he testified that his statements implicating defendant were all lies. The witness' home burned down soon afterwards. (footnote original).

from judgment pursuant to M.C.R. 6.500, *et. seq.,* which was denied. *People v. White,* No. 02-005241-01 (Third Judicial Circuit Court, March 30, 2007).  The Michigan appellate courts denied petitioner leave to appeal. *People v. White,* No. 284484 (Mich.Ct.App. November 14, 2008); *lv. den.* 484 Mich. 866; 769 N.W. 2d 660 (2009).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Admission of the investigative subpoena testimony of witness Romonda McCloud as substantive evidence violated the defendant's Fifth, Sixth, and Fourteenth amendment rights to due process of law and a fair trial where the foundational requirements for admissibility under MRE801(d)(1)(a) had not been met.

II. The admission of Romonda McCloud's investigative subpoena testimony as substantive evidence violated petitioner's Sixth and Fourteenth amendment rights of confrontation.

III. The admission of the prior inconsistent statements of Romonda McCloud to police violated petitioner's Fifth, Sixth, and Fourteenth amendment rights to due process of law and a fair trial where no limiting instruction was given to clarify their permissive use as impeachment evidence only and not as substantive evidence of guilt.

IV. The prosecutor engaged in impermissible misconduct in violation of petitioner's Fifth, Sixth, and Fourteenth amendment due process rights to a fair trial where she called a witness known to be adverse or hostile, referred to impeachment evidence as substantive, and elicited inadmissible hearsay statements from witnesses.

V. Petitioner's due process right to a fair trial was violated where the investigative subpoena testimony introduced at trial was inadmissible as a matter of law where the prosecutor failed to comply with the statute and advise the witness of his right to object to participate in the investigative subpoena testimony, thus constituting a structural defect.

4

VI. Petitioner's due process right to a fair trial was violated where the investigative subpoena testimony introduced at trial was inadmissible as a matter of law where petitioner's counsel requested production of the subpoena challenging its content, the trial court ordered production of the subpoena, and the prosecutor had no subpoena to produce, thus constituting a structural defect.

VII. The introduction of inadmissible hearsay was not harmless error and deprived petitioner of his due process right to a fair trial. [3]

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for

habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts. *Williams v.*

---

[3]  Petitioner's seventh claim is not an independent ground for relief, but is merely an argument that petitioner is entitled to habeas relief because the complained of errors are not harmless.

5

*Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported

6

or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)).  A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

7

### III.  Discussion

**A.  Claims # 1, 5, and 6.  Claims involving the admissibility of Romonda McCloud's investigative subpoena testimony.**

The Court will discuss petitioner's first, fifth, and sixth claims together for purposes of judicial clarity.

Petitioner contends that Romonda McCloud's investigative subpoena testimony should have been suppressed because the prosecutor failed to comply with the statutory procedures under Michigan law regarding investigative subpoenas. *See* M.C.L.A. 767A.1, *et. seq.*  Petitioner further contends that the prior inconsistent subpoena testimony should have been excluded because it was uncorroborated.  Petitioner argues that McCloud's investigative subpoena testimony should not have been admitted pursuant to M.R.E. 801(d)(1)(A), because the investigative subpoena hearing did not qualify as a prior proceeding under which such testimony could be admitted.  Petitioner further argues that McCloud's investigative subpoena testimony should have been excluded because it had been coerced by the prosecutor and the police and obtained in violation of his right to counsel.

Petitioner would not be entitled to habeas relief on his claim that the prosecutor failed to comply with state law requirements regarding investigative subpoenas.  The Supreme Court has held that "'federal habeas corpus review does not lie for errors of state law.' " *Estelle v. McGuire*, 502 U.S. 62, 67

8

(1991)(quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *See also Williams v. White*, 183 F. Supp. 2d 969, 977 (E.D.Mich. 2002).  The Sixth Circuit has held that "[i]n a federal habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law." *Long v. Smith*, 663 F.2d 18, 23 (6th Cir. 1981). "[E]rrors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

Any claim that the prosecutor failed to comply with the requirements under Michigan law for the issuance of an investigative subpoena is non-cognizable on habeas review. *See e.g. Jackson v. Howes,* No. 2011 WL 1118682, * 2-3 (W.D.Mich. March 25, 2011).

Likewise, the fact that Mr. McCloud's prior inconsistent statement from the investigative subpoena hearing was admitted as substantive evidence would not entitle him to habeas relief.  The use of a witness' prior inconsistent statement as substantive evidence, and not merely for impeachment purposes, is not an error of constitutional dimension. *See Isaac v. United States,* 431 F. 2d 11, 15 (9th Cir. 1970).  Therefore, any claim involving the improper admission of Mr. McCloud's prior inconsistent statements is not cognizable in a federal habeas corpus proceeding. *See e.g. Bolton v. Nelson,* 426 F. 2d 807, 809 (9th Cir.

9

1970)(whether procedure followed by state court in permitting use of prior
inconsistent statement was in violation of state decisional rule was not matter for
federal district court to decide, on petition for habeas corpus); *See also Roland
v. Mintzes,* 554 F. Supp. 881, 890 (E.D. Mich. 1983)(alleged misapplication of
state law in impeachment by prosecutor of petitioner's accomplice with prior
inconsistent statements was not cognizable in federal habeas corpus
proceedings).

Petitioner further contends that the trial court erred in admitting McCloud's
testimony from the investigative subpoena hearing, because such a hearing is
more akin to a police investigation or interrogation than it is to a prior judicial
proceeding; the investigative subpoena testimony should not have been
admitted pursuant to M.R.E. 801(d)(1)(A).

MRE 801(d)(1)(A) provides that a statement is not hearsay if:

[t]he declarant testifies at the trial or hearing and is subject to
cross-examination concerning the statement, and the statement is (A)
inconsistent with the declarant's testimony, and was given under oath
subject to the penalty of perjury at a trial, hearing, or other proceeding,
or in a deposition."

This rule is identical to F.R.E. 801(d)(1)(A).

In rejecting petitioner's claim, the Michigan Court of Appeals ruled that Mr.
McCloud's investigative subpoena testimony was akin to grand jury testimony, in
that McCloud was advised that he could have an attorney, his testimony was
given under oath, and the testimony was recorded by a court reporter. *White,*

10

Slip. Op. at * 3. The Michigan Court of Appeals further concluded that the investigative subpoena procedure was "investigatory, ex parte, inquisitive, sworn, basically prosecutorial, held before an officer other than the arresting officer, recorded, and held in circumstances of some legal formality." *Id.* at * 4 (quoting *United States v. Livingston*, 661 F.2d 239, 243 (D.C. Cir. 1981). Finally, the Michigan Court of Appeals concluded that there was "overwhelming proof that the witness did in fact make the prior inconsistent statement," because McCloud testified at trial that he had made the statement. *Id.*

Under both federal and Michigan law, a prior inconsistent statement that is made under oath is not considered hearsay and can be used as substantive evidence. *See United States v. Ricketts,* 317 F.3d 540, 544 (6th Cir. 2003)(citing F.R.E. 801(d)(1)(A)); *People v. Chavies,* 234 Mich. App. 274, 281-84; 593 N.W. 2d 655 (1999)(citing M.R.E. 801(d)(1)(A)). Petitioner acknowledges that "[T]here is precious little case law discussing whether testimony taken pursuant to an investigative subpoena qualifies as a 'proceeding' for purposes of MRE 801(d)(1)(A). In fact, counsel could not locate a precedential published case which addressed that issue." [4]

In *United States v. Mornan,* 413 F. 3d 372, 378-79 (3rd Cir. 2005), the Third Circuit Court of Appeals held that a prosecution witness' prior inconsistent statement which had been given to a prosecutor and postal inspector under oath

---

[4] *See* Brief in Support of Petition for Writ of Habeas Corpus, p. 20.

at a video deposition was admissible pursuant to F.R.E. 801(d)(1)(A).  The Third Circuit's approval of the admission of a videotaped deposition at a federal criminal trial precludes habeas relief, because it shows that "fairminded jurists could disagree" on the correctness of the Michigan Court of Appeals' decision that the investigative subpoena hearing, which was similar in many respects to a deposition, qualfied as a "proceeding" under M.R.E. 801(d)(1)(A). *Richter*, 131 S. Ct. at 786.

The United States Supreme Court has yet to determine what sort of prior hearing would constitute a "prior trial, hearing, or other proceeding," or "a deposition" under F.R.E. 801(d)(1)(A) or any of its state counterparts.  Given the lack of holdings by the Supreme Court on the issue of whether an investigative subpoena hearing would qualify as a "proceeding" within the meaning of 801(d)(1)(A), the Michigan Court of Appeals' rejection of petitioner's claim was not an unreasonable application of clearly established federal law. *See Wright v. Van Patten,* 552 U.S. 120, 126 (2008); *Carey v. Musladin,* 549 U.S. 70, 77 ( 2006).

Petitioner further contends that McCloud's investigative subpoena testimony should have been suppressed because it was coerced and obtained in violation of McCloud's right to counsel.  Respondent argues that petitioner lacks standing to challenge the alleged violations of McCloud's constitutional rights.

Under both federal and Michigan law, a criminal defendant does not have

12

any standing to challenge the voluntariness of a statement made by a witness to the police, because the privilege against self-incrimination of the Fifth and Fourteenth Amendments is personal in nature and does not extend to third parties called as witnesses at trial. *United States v. Nobles,* 422 U.S. 225, 234 (1975); *Berry v. Mintzes,* 529 F. Supp. 1067, 1075 (E.D. Mich. 1981); *People v. Arthur Jones*, 115 Mich. App 543, 547-48; 321 N.W. 2d 723 (1982), *aff'd* 419 Mich. 577 (1984).  Likewise, the Sixth Amendment right to counsel is also personal and cannot be asserted vicariously. *Texas v. Cobb*, 532 U.S. 162, 172, n. 2 (2001)("The Sixth Amendment right to counsel is personal to the defendant and specific to the offense."); *United States v. Sabatino*, 943 F. 2d 94, 96, n. 1 (1st Cir. 1991)(Sixth Amendment rights "are personal in nature and cannot be asserted vicariously"); *United States v. Fortna*, 796 F. 2d 724, 732 (5th Cir. 1986) (holding that Sixth Amendment rights of a defendant are personal and cannot be asserted by another); *Tate v. Yenoir*, 537 F. Supp. 306, 307-08 (E.D. Mich. 1982)(plaintiff could not vicariously assert the Sixth Amendment rights of another person in a § 1983 civil rights complaint).  Petitioner lacks standing to challenge the alleged violations of McCloud's constitutional rights.

While the Fifth Amendment right against compelled incrimination is a personal right and may not be asserted on another's behalf, the Sixth Circuit has held that use of another person's coerced testimony may violate a defendant's rights under the Due Process Clause of the Fourteenth Amendment. *See*

13

*Bradford v. Johnson*, 476 F. 2d 66 (6th Cir. 1973), *aff'g* 354 F.Supp. 1331 (E.D. Mich.1972). Petitioner, nonetheless, is not entitled to habeas relief on his claim for several reasons.

First, the Sixth Circuit decided *Bradford* many years prior to the enactment of the AEDPA. A habeas court may only look at the holdings of the United States Supreme Court as they existed at the time of the relevant state court decision to determine whether the state court decision was contrary to, or an unreasonable application of, clearly established federal law. *Mitzel v. Tate,* 267 F. 3d 524, 530-531 (6th Cir. 2001). A habeas court cannot look to this circuit's decisions, or other courts of appeals, when deciding whether a state court's decision was contrary to, or an unreasonable application of, clearly established federal law. *Id.*

The Supreme Court had not yet decided whether the admission of a coerced third-party statement against a criminal defendant is unconstitutional. *See Samuel v. Frank,* 525 F. 3d 566, 569 (7th Cir. 2008)(sexual assault victim's out of court statements to the police were admissible even though the police told the victim she would not get her baby back if she did not cooperate). A witness' coerced testimony is different from a defendant's coerced statement because "confessions tend to be devastating evidence in a jury trial because jurors find it difficult to imagine someone confessing to a crime if he is not guilty, unless the pressures exerted on him to confess were overwhelming." *Id.* That the case for

14

exclusion of a third-party's coerced statement "is so much weaker...than in the case of a defendant's coerced confession is a further clue that exclusion would require the creation of new law rather than the application of an existing principle." *Id.* Therefore, whether a state court is "right or wrong to refuse to extend the bar against the use of a defendant's coerced statement to that of a nondefendant witness," a state court would not be "unreasonable in refusing to do so[;]". *Id.* at 571.

In the absence of any clearly established federal law requiring the suppression of a nondefendant witness' coerced testimony, petitioner would not be entitled to habeas relief on his claim.

Even where police conduct in obtaining a statement from a witness is inappropriate, if the conduct is "not so extreme that it violates a sense of fundamental fairness, shocking to universal justice," a habeas petitioner's due process rights are not violated where the petitioner is able to cross-examine the witness regarding the circumstances surrounding the police interrogation. *Wilcox v. Ford*, 813 F. 2d 1140, 1149 (11th Cir. 1987) (internal quotation omitted). The opportunity for cross examination allows the jury "adequate opportunity to assess the proper weight to be accorded to the challenged evidence." *Id.*

In the present case, Romonda McCloud was cross-examined extensively by petitioner's counsel and co-defendant's counsel concerning the circumstances surrounding his arrest and interrogation by the police. (Tr.

15

3/11/2003, pp. 177-94; Tr. 3/12/2003, pp. 5-24; 25-59).  McCloud testified that at the time he gave his investigative subpoena testimony, he had been in police custody for three days and had been told by the officers that he was a suspect in these murders and would go to prison for life unless he implicated petitioner in the murders.  Detectives had spoken to McCloud several times. He had not slept, had been given water but no food, and had been denied contact with his family.  McCloud testified that he was taken to the Frank Murphy Hall of Justice for the investigative subpoena testimony in handcuffs and was denied access to a telephone, with which he could have contacted an attorney.  The jury, therefore, had a sufficient basis to determine the reliability of McCloud's investigative subpoena testimony.

In the present case, there is no clearly established Supreme Court law requiring the suppression of a nondefendant witness' coerced statement to the police. The cross-examination of McCloud provided the jury an opportunity to assess the credibility and reliability of McCloud's investigative subpoena testimony.  This Court concludes that under the circumstances, it was not unreasonable for the Michigan Court of Appeals to uphold the trial court's decision to permit the introduction of McCloud's investigative subpoena testimony into evidence.  Petitioner is not entitled to habeas relief on his first, fifth, and sixth claims.

**B.  Claim # 2.  Confrontation Clause claim.**

16

Petitioner next contends that the admission of Mr. McCloud's investigative subpoena testimony violated his Sixth Amendment right to confrontation.

There is no Confrontation Clause problem when the witness testifies at trial and is subject to unrestricted cross-examination. *United States v. Owens,* 484 U.S. 554, 560 (1988); *See also Crawford v. Washington,* 541 U.S. 36, 59, n. 9 (2004); *U.S. v. Mayberry*, 540 F. 3d 506, 516 (6th Cir. 2008). The admission of a witness' prior inconsistent statement pursuant to F.R.E. 801(d)(1)(A) does not violate the Confrontation Clause where the witness testifies at trial, concedes making the prior statements, and is subject to cross-examination. *See California v. Green,* 399 U.S. 149, 164 (1969); *Mayberry,* 540 U.S. at 516.

McCloud testified at trial and acknowledged making the prior inconsistent statements at the investigative subpoena testimony. McCloud was subject to extensive, unrestricted cross-examination regarding his prior inconsistent statement. Because McCloud testified at petitioner's trial and was subject to cross-examination, the admission of McCloud's prior inconsistent statement from the investigative subpoena hearing did not violate petitioner's right to confrontation. Petitioner is not entitled to habeas relief on his second claim.

### C. Claim # 3. The jury instruction claim.

Petitioner next contends that the trial court failed to clarify to the jurors that McCloud's prior inconsistent statements to the police could only be used as impeachment evidence and not as substantive evidence of petitioner's guilt.

17

Petitioner argues that the trial judge should have given the jurors a limiting instruction when McCloud's prior inconsistent statements to the police were read into the record that they could only be used as impeachment evidence. Petitioner further claims that the trial court failed to sufficiently differentiate for the jury the difference between McCloud's prior inconsistent statements to the police, which could only be used for impeachment, and his prior inconsistent testimony at the investigative subpoena hearing, which could be used as substantive evidence.

At the conclusion of trial, the judge instructed the jurors that McCloud had made several prior inconsistent statements and that these statements could not be used to decide whether the elements of the crime had been established but only could be used to determine whether the witness was being truthful. (Tr. 3/21/2003, p. 13). The judge then instructed that if the witness testified that the prior statement was true or if the prior inconsistent statement was made under oath subject to the penalty of perjury, then the statement could be used as "proof of the facts in the statement." *Id.* The judge, however, did not specifically instruct the jurors that only McCloud's testimony from the investigative subpoena hearing qualified under this definition as substantive evidence.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct

18

appeal.  The question in such a collateral proceeding is whether the ailing

instruction so infected the entire trial that the resulting conviction violates due

process, not merely whether the instruction is undesirable, erroneous, or even

"universally condemned", and an omission or incomplete instruction is less likely

to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S.

145, 154-155 (1977).  The challenged instruction must not be judged in isolation

but must be considered in the context of the entire jury charge. *Jones v. United*

States, 527 U.S. 373, 391 (1999).  Further, any ambiguity, inconsistency or

deficiency in a jury instruction does not by itself necessarily constitute a due

process violation. *Waddington v. Sarausad*, 129 S.Ct. 823, 831 (2009).  It is not

enough that there might be some "slight possibility" that the jury misapplied the

instruction. *Id.* A habeas petitioner's burden of showing prejudice is especially

heavy when a petitioner claims that a jury instruction was incomplete, because

an omission, or an incomplete instruction, is less likely to be prejudicial than a

misstatement of the law. *See Hardaway v. Withrow,* 305 F. 3d 558, 565 (6th Cir.

2002).

    The use of a witness' prior inconsistent statement as substantive

evidence, and not merely for impeachment purposes, is not an error of

constitutional dimension. *See Isaac v. United States,* 431 F. 2d at 15.  Therefore,

any jury instruction that would permit the jury to use to a witness' prior

inconsistent statement as substantive evidence and not solely for impeachment

19

is not a constitutional error which would require reversal of a criminal conviction.
*Id.*

McCloud's investigative subpoena testimony was properly admissible as substantive evidence of petitioner's guilt pursuant to M.R.E. 801(d)(1)(A) and clearly implicated petitioner in the murders.  McCloud's prior statements to the police were duplicative of this evidence.  Because McCloud's investigative subpoena testimony established petitioner's guilt, the trial court's failure to clarify that McCloud's prior inconsistent statements to the police could only be used as impeachment evidence was harmless error that would not entitle petitioner to habeas relief. *See e.g. Doss v. Bock,* 89 Fed.Appx. 964, 965-66 (6th Cir. 2004)(state court's determination that failure to give jury instruction on prior inconsistent statements was harmless error was not unreasonable application of Supreme Court precedent, and thus did not support federal habeas relief; in light of admissible evidence, which included prior testimony, result of trial likely would have been the same if instruction had been given).  Petitioner is not entitled to habeas relief on his third claim.

**D.  Claim # 4.  The prosecutorial misconduct claim.**

Petitioner next contends that he was deprived of a fair trial because of prosecutorial misconduct.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction."

20

*Berger v. United States*, 295 U.S. 78, 88 (1935).  When a petitioner seeking

habeas relief makes a claim of prosecutorial misconduct, the reviewing court

must consider that the touchstone of due process is the fairness of the trial, not

the culpability of the prosecutor.  On habeas review, a court's role is to

determine whether the conduct was so egregious as to render the entire trial

fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d

1348, 1355-1356 (6th Cir. 1993).  When analyzing a claim of prosecutorial

misconduct, a court must initially decide whether the challenged statements

were improper. *Boyle v. Million*, 201 F. 3d 711, 717 (6th Cir. 2000).  If the conduct

is improper, the district court must then examine whether the statements or

remarks are so flagrant as to constitute a denial of due process and warrant

granting a writ. *Id.*  In evaluating prosecutorial misconduct in a habeas case,

consideration should be given to the degree to which the challenged remarks

had a tendency to mislead the jury and to prejudice the accused, whether they

were isolated or extensive, whether they were deliberately or accidentally placed

before the jury, and, except in the sentencing phase of a capital murder case,

the strength of the competent proof against the accused. *Serra,* 4 F.3d at 1355-

56; *See also Simpson v. Warren,* 662 F. Supp. 2d 835, 853 (E.D. Mich. 2009).

"The Supreme Court has clearly indicated that the state courts have substantial

breathing room when considering prosecutorial misconduct claims because

'constitutional line drawing [in prosecutorial misconduct cases] is necessarily

imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974)).  In deciding whether prosecutorial misconduct mandates that habeas relief be granted, a federal court must apply the harmless error standard. *See Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997).

Petitioner first contends that the prosecutor committed misconduct by calling Romonda McCloud as a hostile witness in order to admit his prior inconsistent statements into evidence.

Under F.R.E. 607, it is proper for a prosecutor to impeach the credibility of his or her own witness. *See U.S. v. Faymore,* 736 F. 2d 328, 334 (6th Cir. 1984). Although F.R.E. 607 is not controlling in a state trial, it "certainly provides persuasive evidence that allowing the prosecutor to impeach his own witnesses does not rise to a constitutional violation meriting habeas corpus relief." *Lyle v. Koehler*, 720 F. 2d 426, 429 (6th Cir. 1983). As mentioned above, Mr. McCloud's investigative subpoena testimony was admissible as substantive evidence pursuant to M.R.E. 801(d)(1)(A).  Petitioner has failed to show that there was anything improper about the prosecutor calling McCloud to testify.

Petitioner next contends that the prosecutor asked questions about the family circumstances which were irrelevant and were asked in order to elicit sympathy for the victims.

The Sixth Circuit has noted that there are no Supreme Court cases which

22

support the proposition that a prosecutor's questions that simply call for answers that are inadmissible due to relevancy constitute prosecutorial misconduct that rises to the level of a federal due process violation. *See Wade v. White,* 120 Fed. Appx. 591, 594 (6th Cir. 2005).  The fact that the prosecutor attempted to elicit irrelevant evidence about the victim's family circumstances  would not entitle petitioner to habeas relief. *Id.*

Regardless of whether the prosecutor's appeals to the jury's emotions or sympathies was improper, this would be insufficient to render the trial fundamentally unfair, since it was likely that the nature of the crime itself would have produced juror sympathy even before the prosecutor made any of these comments. *See Millender v. Adams,* 187 F. Supp. 2d 852, 875-76 (E.D. Mich. 2002)(citing *Walker v. Gibson*, 228 F. 3d 1217, 1243 (10th Cir. 2000)).  This portion of petitioner's claim was also defeated by the fact that the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision (Tr. 3/21/2003, p. 4). *Id., see also Welch v. Burke*, 49 F. Supp. 2d 992, 1006 (E.D. Mich. 1999).

Petitioner next argues that the prosecutor committed misconduct by eliciting inadmissible hearsay testimony from Stephanie Taylor and Nicole Anderson that one of the victims was expecting to engage in a drug transaction. Even if the prosecutor's questions amounted to misconduct, such error was harmless in light of petitioner's own testimony that he was at the victims' house

23

using cocaine at the time of the murder.

Petitioner next contends that the prosecutor engaged in misconduct by asking a series of speculative questions regarding the illegal drug trade. A review of the transcripts shows that the judge sustained the objections, sometimes very emphatically, to most of these questions. (Tr. 3/18/2003, pp. 9-16). Because the trial judge quickly sustained defense counsel's objections to these questions, Petitioner was not deprived of a fair trial because of prosecutorial misconduct. *U.S. v. Galloffway*, 316 F.3d 624, 633 (6th Cir. 2003).

With respect to the prosecutor's final question, the prosecutor was permitted by the trial judge to ask Sargent Willson whether a person who leaves a gun at the scene of a shooting could be connected to the shooting if the bullet in the victim's body matched the gun and the gun was traced to the person who fired it. The judge overruled defense counsel's objection to the question. (Tr. 3/18/2003, pp. 15-16).

Although Petitioner has framed his improper question claim as a prosecutorial-misconduct challenge, "it amounts in the end to a challenge to the trial court's decision to allow the introduction of this evidence." *Webb v. Mitchell*, 586 F. 3d 383, 397 (6th Cir. 2009). "A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings." *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008). The judge ruled that the prosecutor could ask this question. The prosecutor's question to

24

the witness was relevant and admissible because it went to whether or how a murder weapon could be traced to the person who fired it.  A prosecutor does not commit misconduct by asking witnesses relevant questions. *See Slagle,* 457 F. 3d at 518.

Petitioner finally claims that the prosecutor used McCloud's prior inconsistent statements to the police as substantive evidence and not just to impeach his credibility.

In the present case, in light of the trial court's instruction to the jury that the lawyers' statements and arguments were not evidence, any possible use of McCloud's prior inconsistent statements by the prosecutor as substantive evidence did not render Petitioner's trial fundamentally unfair. (Tr. 3/21/2003, p. 7). *See Adams v. Holland*, 168 Fed. Appx. 17, 20 (6th Cir. 2005).  In this case, the prosecutor's use of McCloud's prior statements to the police in closing argument argument did not "transmute" the statements "evidentiary use from impeachment to substantive evidence of guilt." *Id.* at 21.  Petitioner is not entitled to habeas relief on his fourth claim.

### IV. Conclusion

For the reasons discussed, state court adjudication of the Petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  Nor did the state court adjudication result in a

25

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court concludes that the Petitioner is not entitled to federal habeas relief on the claims contained in his petition.

In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas Petitioner's constitutional claims on the merits, the Petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

The Court finds that a certificate of appealability is warranted with respect to the trial court's admission of Petitioner's investigative subpoena hearing testimony.

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of

26

habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is

**GRANTED** in accordance with the opinion**.**


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  November 30, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 30, 2011, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager

27